**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Skier's Choice, Inc. | ) |
|     Plaintiffs/Counter-Defendant, | ) Case No. 11-cv-6006 |
| | ) Judge Sharon Johnson Coleman |
| v. | ) |
| Skipper Marine & Affiliates, Inc., d/b/a Chicago Sea Ray | ) |
|     Defendant/Counter-Plaintiff. | ) |

**MEMORANDUM OPINION**

Defendant/Counter-Plaintiff ("Skipper Marine") brings forth this matter alleging four causes of action including a violation of the Wisconsin Fair Dealership Law ("WFDL"), the Illinois Equipment Fair Dealership Law ("IEFDL") and breach of contract and the duty of good faith and fair dealing claims. Plaintiff/Counter-Defendant ("Skier's Choice, Inc." or "Skier's Choice") has filed a motion to strike certain paragraphs of Skipper Marine's answer to its Complaint and to dismiss Skipper Marine's counterclaims in their entirety. For the following reasons, Skier's Choice's motion is granted in part and denied in part.

**BACKGROUND**

Skipper Marine was the exclusive dealer of Skier's Choice Supra and Moomba brand ski boats in the greater Lake County, Illinois area from 2004-2011. During that time, with Skier's Choice's knowledge and approval, Skipper Marine also sold boats throughout Southern Wisconsin and in Western Wisconsin and Iowa through authorized

sub dealers. The parties' relationship was memorialized by a series of contracts. As part of the parties' course of dealings, form contracts were issued by Skier's Choice for Skipper Marine's review in July or August of each year. Although the effective date would be September 1, in practice, the contracts between the parties were often not signed until well after September 1, if ever. It is important to note that language included in the form contracts stated that the contracts would "expire upon the signing of a new Supra Dealership Agreement by both parties or by August 31, whichever is earlier."

In the summer of 2010, as the August 31, 2010 expiration date of the 2010 ADA agreement approached, Skier's Choice and Skipper Marine began their contract negotiation process for the 2011 boating season. Although the parties exchanged various drafts of the form contract, neither party actually signed a dealership agreement for the 2011 boat season. Nevertheless, Skier's Choice and Skipper Marine continued to conduct business beyond August 31, 2010 in the same manner they had conducted business during the 2010 boating season.

In furtherance of their ongoing business relationship, during the spring of 2011, Skipper Marine negotiated two separate sponsorship agreements with two professional ski teams, under which both teams were required to use Skier's Choice boats in their practices and competition.

In May 2011, Skier's Choice representatives visited the Skipper Marine facilities in Volvo, Illinois. After this visit, Skipper Marine ordered several of Skier's Choice model year 2012 boats to sell in the upcoming year. However, between May and July 2011, unbeknownst to Skipper Marine, Skier's Choice was in negotiations with Boat

House Lauderdale Lakes Chicago to replace Skipper Marine as Skier's Choice's dealer in that area.

Finally, on July 8, 2011, Skier's Choice terminated its relationship with Skipper Marine without cause. On July 25, 2011, Skipper Marine responded with a demand letter, threatening litigation and demanding certain payments and other accommodations.

In response, on August 29, 2011, Skier's Choice filed a complaint in this Court for declaratory relief. In the complaint, Skier's Choice acknowledged that an implied contract existed between the parties for the 2011 boating season, but declared that the parties disagreed with the terms of the implied contract. As such, Skier's Choice, sought relief from the uncertainty of their rights and responsibilities under the 2011 contract with Skipper Marine. In response, Skipper Marine filed both an answer and counter-claim alleging that Skier's Choice violated the WFDL, the IEFDL and breached the 2011 implied contract and the duty of good faith and fair dealing. Skier's Choice now moves to strike certain portions of Skipper Marine's answer and to dismiss each of Skipper Marine's counterclaims.

## LEGAL ANALYSIS

Rule 8 of the Federal Rules of Civil Procedure sets forth the federal pleading requirement of a short and plain statement of the claim upon which relief can be granted. Fed. R. Civ. P. 8(a). In order to survive dismissal, the complaint must allege sufficient factual content to raise the right to relief above a speculative level. *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 569 n. 14, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). When considering dismissal of a complaint, the court accepts as true all well-pleaded

allegations and draws all reasonable inferences in favor of the plaintiff. *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

### DISCUSSION

**Motion to Strike**

Skier's Choice seeks to strike paragraphs 6, 9, 14 and 15 of Skipper Marine's answer and admit the corresponding paragraphs into the record. Skipper Marine has since admitted that venue in the Northern District of Illinois is appropriate. Furthermore, as Skipper Marine is an Illinois corporation and Skier's Choice is incorporated in Oklahoma, the parties have established subject matter jurisdiction. Therefore, Skier's Choice's motion to strike paragraphs six and nine of Skipper Marine's answer is granted. The remaining paragraphs of Skipper Marine's answer in question, paragraphs 14 and 15, are stricken as moot based on the Court's ruling on the motion to dismiss below.

**Wisconsin Fair Dealership Law (WFDL)**

Skier's Choice contends that Skipper Marine's claim under the WFDL should fail because Skipper Marine has not met the necessary pleading standards to establish a claim under the statute. WFDL is a statute that applies to dealers "situated in" Wisconsin and is intended to protect them from a supplier's inherently unfair bargaining power during the negotiation of the dealership agreements. Wis. Stat. §135.025; *Baldewein Co. v. Tri-Clover, Inc.*, 2000 WI 20, ¶ 10, 233 Wis. 2d 57, 606 N.W.2d 145. Skipper Marine argues that by failing to renew the dealership agreement or to supply Skipper Marine with a 90 days' written notice prior to the dealer agreement's expiration, Skier's Choice has violated the WFDL.

To establish a claim under WFDL, a plaintiff must allege "(1) a contract or agreement; (2) which grants the right to sell or distribute goods or services, or which grants the right to use a trade name, logo, advertising or other commercial symbol; and (3) a community of interest in the business of offering, selling or distributing goods or services." *Water Quality Store, LLC v. Dynasty Spas, Inc.*, 2010 WI App 112, ¶ 10, 328 Wis. 2d 717, 789 N.W.2d595 (quoting *Central Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶ 29, 272 Wis. 2d 561, 681 N.W.2d 178). Skier's Choice does not challenge whether Skipper Marine has met the first two elements of the WFDL, but instead focuses on Skipper Marine's failure to demonstrate a community of interest. To establish a "community of interest" a dealer must demonstrate that it had such a significant stake in the relationship such that if the supplier were to terminate or alter the terms of the relationship, it would threaten the economic health of the dealer. *Baldewein*, 233 Wis. 2d at 70-71. The Seventh Circuit has artfully summarized this concept as the supplier having the dealer "over a barrel." *Moodie v. School Book Fairs, Inc.*, 889 F.2d 739, 743 (7th Cir. 1989). The over a barrel inquiry is usually one of fact in which courts consider an extensive, non-exclusive list of factors including:

[1] how long the parties have dealt with each other; [2] the extent and nature of the obligations imposed on the parties in the contract or agreement between them; [3] what percentage of time or revenue the alleged dealer devotes to the alleged grantor's products or services; [4] what percentage of the gross proceeds or profits of the alleged dealer derives from the alleged grantor's products or services; [5] the extent and nature of the alleged grantor's grant of territory to the alleged dealer; [6] the extent and nature of the alleged dealer's uses of the alleged grantor's proprietary marks (such as trademarks or logos); [7] the extent and nature of the alleged dealer's financial investment in inventory, facilities, and good will of the alleged dealership; [8] the personnel which the alleged dealer devotes to the alleged dealership; [9] how much the alleged dealer spends on advertising or promotional expenditures for the alleged grantor's products or

services; [and] [10] the extent and nature of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products or services. *Water Quality Store, LLC* 2010 WI App 112, ¶ 10 (quoting *Ziegler Co. v. Rexnord, Inc.*, 139 Wis. 2d 593, 606, 407 N.W. 2d 873 (1987)).

Further, to prevail under the WFDL a dealer must demonstrate that the community of interest *in Wisconsin* is so extensive that the dealer can be considered "situated in" Wisconsin. *Baldewein*, 233 Wis. 2d 57, 74 n. 10. To determine whether a dealer is situated in Wisconsin, courts again look to a multitude of factors including:

(1) the percent of total sales in Wisconsin (and/or percent of total revenue or profits derived from Wisconsin); (2) how long the parties have dealt with each other in Wisconsin; (3) the extent and nature of the obligations imposed on the dealer regarding operations in Wisconsin; (4) the extent and nature of the grant of territory in this state; (5) the extent and nature of the use of the grantor's proprietary marks in this state; (6) the extent and nature of the dealer's financial investment in inventory, facilities, and good will of the dealership in this state; (7) the personnel devoted to the Wisconsin market; (8) the level of advertising and/or promotional expenditures in Wisconsin; and (9) the extent and nature of any supplementary services provided in Wisconsin. *Baldewein*, 2000 WI 20, ¶ 30.

Skier's Choice argues that Skipper Marine has failed to allege any factors that establish that a community of interest exists between the parties or that this community of interest is sufficiently situated in Wisconsin. Specifically, Skier's Choice contends that Skipper Marine is the largest boat dealer in the Midwest and has been in business for 40 years, but has only done business with Skier's Choice for seven of those years. Further, during the past seven years, Skipper Marine has had the right to sell products that compete with Skier's Choice boats. Skier's Choice argues that these facts defeat an allegation of a community of interest. Additionally, Skier's Choice argues that Skipper Marine has not alleged sufficient facts about its amount of sales, when the sales occurred and the percentage of these sales conducted in Wisconsin in comparison to Skipper

Marine's overall sales. Without these facts, Skier's Choice argues that Skipper Marine has not established that it is situated in Wisconsin and should not be afforded the protections of the WFDL.

Skipper Marine's counterclaim alleges that the parties have contracted for over seven years and that the parties owed each other extensive and complex duties. Further, Skipper Marine alleges that it has advertised and sold Skier's Choice boats throughout Southern Wisconsin, having invested significant time, expense and good will promoting these products. While the complaint does not contain numerous details explaining the exact nature of the relationship between Skipper Marine and Skier's Choice or the extent to which Skipper Marine does business in Wisconsin, the pleading stage is not the proper place to evaluate these issues. Drawing all reasonable inferences in favor of the plaintiff, Skipper Marine states a plausible claim that it is situated in Wisconsin and that it has made a substantial investment in its relationship with Skier's Choice such that a community of interest exists. Accordingly, plaintiff/counter defendant's motion to dismiss Skipper Marine's WFDL claim is denied.

**Illinois Equipment Fair Dealership Law (IEFDL)**

Skier's Choice's next argument is that the IEFDL does not apply to Skipper Marine's claim. The IEFDL requires the repurchase of inventory under certain circumstances and was originally enacted to protect independent farm equipment and construction dealers. *Greenview AG Ctr., Inc. v. Yetter Mfg. Co.*, 246 Ill. App. 3d 132, 139-40, 615 N.E. 2d 395 (4th Dist. 1993). Specifically, Section 3 of the IEFDL provides:

"Whenever any retailer enters into a written or oral agreement with a wholesaler manufacturer or distributor wherein the retailer agrees to maintain an inventory and the contract is terminated by wholesaler, manufacturer, distributor, or retailer, then the retailer may require the repurchase of the inventory as provided for in this Act." Ill.Rev.Stat.1991, ch. 5, par. 1503.

Pursuant to the statute, inventory is defined as "farm implements, farm machinery, attachments, accessories and repair parts, outdoor power equipment including but not limited to all-terrain vehicles or off-highway motorcycles, construction equipment, industrial equipment, attachments, accessories and repair parts." 815 ILCS § 715(3). Skier's Choice argues that the IEFDL does not apply to this case because the ski boats sold by Skipper Marine do not fall into the categories of inventory enumerated in the statute.

In response, Skipper Marine notes that when defining "inventory" the IEFDL introduces the list of examples with the phrase "including, but not limited to" suggesting that the categories provided in the statute are mere examples of a general or broader category of outdoor motorized equipment. In support of this interpretation, Skipper Marine relies on the fact that the statute was recently amended to include all terrain vehicles ("ATVs") and off-highway motorcycles as inventory. Here, Skipper Marine claims that the ski boats at issue, similar to ATVs and motorcycles, are broader examples of motorized outdoor equipment, and as a dealer of this equipment, Skipper Marine should be afforded the protections of the IEFDL.

Based on the legislative intent, IEFDL was intended to provide protection to dealers of farm equipment. *Greenview AG Ctr. V. Yetter Mfg. Co.*, 246 Ill. App. 3d 132,

139-40,615 N.E.2d 395 (4th Dist. 1993) (citing 86th Ill.Gen.Assem., Senate Proceedings, May 25, 1989, at 260 (statement of Senator Donahue) ("[W]hen we initiated this law back in 1983, it was for the purposes of farm equipment and construction equipment to be able to be bought back for those dealerships through very tough times."). The addition of ATVs and motorcycles to the statute's definition of inventory does not undermine this intent. Instead, ATVs and off-road motorcycles serve as additional examples of equipment that can be used in rural, unpaved farm settings, unlike recreational water equipment.

Furthermore, the legislature has indicated that these additional vehicles were included in the inventory definition not to broaden the scope of outdoor motorized equipment, as Skipper Marine suggests, but because there was a specific "void in that area" for those class of vehicles. *Scholl's 4 Season Motor Sports, Inc. v. Illinois Motor Vehicle Review Board*, No. 1-10-2995, 2011 Ill. App. LEXIS 979, *23-24. (1st Dist. Sept. 8, 2011). Thus, while the statute incorporates the more general phrase "outdoor power equipment," the legislative history indicates that the statute was enacted for a more narrow purpose. 86th Ill.Gen.Assem., Senate Proceedings, May 25, 1989, at 260 (statement of Senator Donahue). Despite past expansion, the scope of the inventory protected has been consistently limited to farm equipment and equipment analogous thereof. *See Tennessee River Collection Yacht Sales, LLC v. P.F.C., Inc.*, No. E2008-02502-COA-R3-CV 2009 Tenn. App. LEXIS 646, *9-19 (Tenn. Ct. App. Sept. 29, 2009) ("Despite the fact that we did not find a case in any jurisdiction directly on point, we found over 90 cases that use the term "outdoor power equipment" in a context consistent with a lawn and garden application and none consistent with a recreational motor boat.").

Skipper Marine cites no case law that expands the phrase "outdoor power equipment" beyond this interpretation. Further, courts in other circuits have directly rejected the argument that 'outdoor power equipment' can be interpreted to include recreational motor boats. *Id.* This court agrees. Accordingly, plaintiff/counter defendant's motion to dismiss is granted with respect to Skipper Marine's claim under the IEFDL.

**Breach of Contract**

Both Skipper Marine and Skier's Choice allege that the parties operated under an implied contract during the 2011 boating season that consisted of the same provisions of the parties' 2010 dealer agreement. Skipper Marine argues that Skier's Choice breached this implied contract and its implied duty of good faith and fair dealing when it failed to notify Skipper Marine prior to July 8, 2011 that it would be terminating their agreement on August 31, 2011.

Here, both parties concede that after the expiration of the 2010 dealer agreement, they continued to perform in 2011 as though governed by the 2010 contract. Skipper Marine argues that this contract was breached because Skier's Choice failed to give 90 days' notice of its decision to terminate its relationship with Skipper Marine. Skipper Marine, however, is confusing the potential existence of an implied contract with the terms of such an agreement. Even if we assume that a contractual agreement consistent with the terms of the 2010 dealer agreement can be implied from the parties' conduct or prior course of dealings, the terms of the 2010 dealer agreement did not include a 90 days' notice requirement for non-renewal prior to the contract's expiration. Instead, the 2010 dealer agreement specifically stated that the contract automatically expired August

31 if the parties failed to enter into a new agreement. Further, there is no evidence nor does Skipper Marine allege that the parties agreed to modify the 2010 dealership agreement to establish a 90 day notice requirement for non-renewal. Thus, Skipper Marine has failed to demonstrate that an implied contract existed between the parties that included a 90 days notice requirement for non-renewal prior to the contracts expiration date. Therefore, Skipper Marine has failed to allege a contractual provision that Skier's Choice has breached.

Additionally, Skipper Marine alleges that Skier's Choice breached the parties' implied contract by failing to act in good faith and with fair dealings. Under Illinois law, the duty of good faith and fair dealing is implied in every contract and requires a party "vested with contractual discretion to exercise it reasonably, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of parties." *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 131, 323 Ill. Dec. 755, 894 N.E.2d 781 (2008). The duty is not an actual independent contractual duty, but instead is a principle that ensures that the parties do not prevent one another the benefits under the contract or take advantage of each other in such a way that could have been avoided at the time the contract was initially drafted. *Fox v. Heimann*, 375 Ill. App. 3d 35, 42, 313 Ill. Dec. 366, 872 N.E.2d 126 (2007) (citing *Cramer v. Insur. Exchange Agency*, 174 Ill.2d 513, 523-24, 221 Ill. Dec. 473, 675 N.E.2d 897 (1996)).

Skipper Marine alleges that Skier's Choice encouraged Skipper Marine to take actions that would contractually bind Skipper Marine beyond the expiration date of the implied contract. However, there is no ambiguity, in the implied contract's expiration provision. Therefore, at no time was Skipper Marine unaware of the contract's expiration

date. As previously discussed, the implied contract between the parties ( which incorporated the terms of the 2010 dealership agreement) expired on August 31st. Due to the lack of ambiguity as to the contract's expiration provision, this Court finds that Skipper Marine had no reasonable expectations that were violated by Skier's Choice's decision to terminate its relationship with Skipper Marine. Furthermore, Skipper Marine has not alleged that Skier's Choice interpreted the expiration provision with any degree of broad discretion as is required for a claim of a breach of the duty of good faith and fair dealing. *Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676, 916, 958 N.E.2d 1100, 1112 (sept. 28, 2011). Accordingly, even in light of the duty of good faith and fair dealing, Skipper Marine has not sufficiently pled that Skier's Choice has breached the implied contract. Accordingly, Skier's Choice's motion to dismiss is granted with respect to the breach of contract claim.

## CONCLUSION

Skier's Choice's motion to strike and motion to dismiss is granted in part and denied in part. The motion to strike is granted with respect to paragraph six (6) and nine (9) of Skipper Marine's answer to Skier's Choice's complaint. Paragraphs 14 and 15 of Skipper Marine's answers are stricken as moot. The motion to dismiss is granted in its entirety with respect to Skipper Marine's breach of contract claim and claim under the Illinois Equipment Fair Dealership Law. The motion to dismiss is denied with respect to Skipper Marine's claim under the Wisconsin Fair Dealership Law.

May 15, 2012
_____
Dated

_____
Hon. Sharon Johnson Coleman
United States District Court